1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JAIME RODOLFO LOPEZ,

          Petitioner,

     v.

MARTIN GAMBOA, Warden,

          Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 22-4281-JEM

MEMORANDUM OPINION AND ORDER
DENYING PETITION FOR WRIT OF
HABEAS CORPUS AND DENYING
CERTIFICATE OF APPEALABILITY

## PROCEEDINGS

On June 16, 2022, Jaime Rodolfo Lopez ("Petitioner"), a state prisoner proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254 ("Petition").  On July 22, 2022, Warden Martin Gamboa ("Respondent") filed an Answer. Petitioner has not filed a reply.

Pursuant to 28 U.S.C. § 636(c), both parties have consented to proceed before this Magistrate Judge.

## PRIOR PROCEEDINGS

On September 24, 2020, a Los Angeles County Superior Court jury found Petitioner guilty of three counts of forcible rape (Cal. Penal Code § 261(a)(2)), one count of injuring a cohabitant or child's parent (Cal. Penal Code § 273.5), one count of criminal threats (Cal.

1  Penal Code § 422(a)), and one count of dissuading a witness from prosecuting a crime

2  (Cal. Penal Code § 136.1(b)(2)).  (Lodgment ("LD") 1, 2 Clerk's Transcript ("CT") 249-54,

3  257-59.)  The jury acquitted Petitioner of a second count of dissuading a witness.  (2 CT

4  258.)  On December 18, 2020, the trial court sentenced Petitioner to 16 years in state

5  prison.  (2 CT 302.)  The trial court issued a protective order ordering Petitioner to stay

6  away from the victim and their two children.  (2 CT 301.)

7      Petitioner appealed to the California Court of Appeal, raising two claims.  He argued

8  that his confrontation rights were violated because he and the witnesses were required to

9  wear masks, and that the protective order erroneously included his children.  (LD 3.)  In a

10  published opinion issued on February 15, 2022, the Court of Appeal ordered the trial court

11  to remove Petitioner's children from the protective order, but otherwise affirmed the

12  judgment.  (LD 6; see People v. Lopez, 75 Cal. App. 5th 227 (2022).)  Petitioner filed a

13  petition for review in the California Supreme Court, which denied it without comment on

14  April 27, 2022.  (LD 7, 8.)

15                          **SUMMARY OF EVIDENCE AT TRIAL**

16      Based on its independent review of the record, the Court adopts the following factual

17  summary from the California Court of Appeal's unpublished opinion as a fair and accurate

18  summary of the evidence presented at trial:

19          Amalia testified that she and [Petitioner] had been in a relationship for

20      several years and lived in a small apartment with their two children and

21      [Petitioner]'s brother (we refer to Amalia and the children by their first names only

22      to protect their privacy).  Amalia testified to the incidents that occurred over the

23      course of two days in May 2019.  She explained the three separate rapes, how

24      [Petitioner] physically assaulted her, choked her, hit her in the face, pulled her hair

25      and tore her undergarments off her body.  She testified to [Petitioner]'s threats to

26      kill her and confirmed the accuracy of photographs showing the injuries she

27

28                                                2

1  suffered to her face and her torn undergarments.  Amalia also testified about

2  telephone conversations with [Petitioner] while he was in jail and his efforts to

3  pressure her to disavow the charges against him.  Audio recordings of the

4  telephone conversations were played for the jury.

5  Detective Eduardo Flores testified to his interactions with Amalia and

6  confirmed she had visible injuries to her face and neck.

7  Wendeline Ruvalcaba, a registered nurse, testified to her examination of

8  Amalia.  She said Amalia was "very emotional" during the examination and had

9  numerous injuries, including the existence of petechiae (tiny broken blood vessels)

10  consistent with having been choked.  Another registered nurse, Malinda Wheeler,

11  testified to Amalia's injuries that were consistent with manual strangulation.

12  [Petitioner]'s brother testified he lived with [Petitioner] and Amalia and

13  denied ever seeing his brother hit or verbally abuse Amalia.  He denied hearing

14  any sounds of an argument or disturbance on the night and morning Amalia

15  testified she was raped.  He also denied seeing Amalia looking distressed or

16  crying during that time.

17  [Petitioner] testified that he and Amalia had consensual relations and that

18  he had never abused her during their seven-year relationship.  He admitted they

19  argued on the dates she said he raped her but [claimed] that it was Amalia who

20  got angry with him. He denied hitting Amalia, choking her, pulling her hair, raping

21  her, attempting to sodomize her, threatening her or saying any of the derogatory

22  statements to which she testified.

23  (LD 6 at 3-4.)

24  ///

25  ///

26  ///

27

28  3

1

## PETITIONER'S HABEAS CLAIM

2    Petitioner contends that his Sixth Amendment right to confrontation was violated when

3 the trial court required him and the testifying witnesses to wear face masks, preventing the

4 jury and counsel from observing their facial expressions below the eyes.  (Pet. at 5, 18-24.)

5

## STANDARD OF REVIEW

6    The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs the

7 Court's consideration of Petitioner's cognizable federal claims.  28 U.S.C. § 2254(d), as

8 amended by AEDPA, states:

9    An application for a writ of habeas corpus on behalf of a person in custody

10    pursuant to the judgment of a State court shall not be granted with respect to any

11    claim that was adjudicated on the merits in State court proceedings unless the

12    adjudication of the claim - (1) resulted in a decision that was contrary to, or

13    involved an unreasonable application of, clearly established Federal law, as

14    determined by the Supreme Court of the United States; or (2) resulted in a

15    decision that was based on an unreasonable determination of the facts in light of

16    the evidence presented in the State court proceeding.

17    Under AEDPA, the "clearly established Federal law" that controls federal habeas

18 review of state court decisions consists of holdings (as opposed to dicta) of Supreme Court

19 decisions "as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S.

20 362, 412 (2000); see also Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003) (clearly

21 established federal law is "the governing legal principle or principles set forth by the Supreme

22 Court at the time the state court renders its decision").  "[I]f a habeas court must extend a

23 rationale before it can apply to the facts at hand, then by definition the rationale was not

24 clearly established at the time of the state-court decision."  White v. Woodall, 572 U.S. 415,

25 426 (2014) (internal quotation marks and citation omitted).  If there is no Supreme Court

26 precedent that controls a legal issue raised by a habeas petitioner in state court, the state

27

28

1  court's decision cannot be contrary to, or an unreasonable application of, clearly established

2  federal law.  Wright v. Van Patten, 552 U.S. 120, 125-26 (2008) (per curiam); see also Carey

3  v. Musladin, 549 U.S. 70, 76-77 (2006).

4        A federal habeas court may grant relief under the "contrary to" clause if the state court

5  "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or if it

6  decides a case differently than the Supreme Court has done on a set of materially

7  indistinguishable facts.  Williams, 529 U.S. at 405-406.  "The court may grant relief under the

8  'unreasonable application' clause if the state court correctly identifies the governing legal

9  principle . . . but unreasonably applies it to the facts of a particular case."  Bell v. Cone, 535

10  U.S. 685, 694 (2002).  An unreasonable application of Supreme Court holdings "must be

11  objectively unreasonable, not merely wrong."  White, 572 U.S. at 419 (citing Andrade, 538

12  U.S. at 75-76; internal quotation marks omitted).  "A state court's determination that a claim

13  lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

14  the correctness of the state court's decision."  Harrington v. Richter, 562 U.S. 86, 101 (2011)

15  (citation omitted).  The state court's decision must be "so lacking in justification that there

16  was an error well understood and comprehended in existing law beyond any possibility for

17  fairminded disagreement."  Id. at 102.  "If this standard is difficult to meet, that is because it

18  was meant to be."  Id.

19        A state court need not cite Supreme Court precedent when resolving a habeas corpus

20  claim.  See Early v. Packer, 537 U.S. 3, 8 (2002).  "[S]o long as neither the reasoning nor the

21  result of the state-court decision contradicts [Supreme Court precedent,]" the state court

22  decision will not be "contrary to" clearly established federal law.  Id.

23        A state court's silent denial of federal claims constitutes a denial "on the merits" for

24  purposes of federal habeas review, and the AEDPA deferential standard of review applies.

25  Richter, 562 U.S. at 98-99.  When no reasoned decision is available, the habeas petitioner

26  has the burden of "showing there was no reasonable basis for the state court to deny relief."

27

28                                    5

1 | Id. at 98.  The federal habeas court must conduct an independent review of the record to

2 | determine whether the state court decision is objectively reasonable.  See Stanley v. Cullen,

3 | 633 F.3d 852, 860 (9th Cir. 2011); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

4 |         When a reasoned decision is available, the federal habeas court "looks through" a

5 | state court's unexplained decision to the last reasoned decision of a lower state court, and

6 | applies the AEDPA standard to that decision.  See Wilson v. Sellers, 138 S. Ct. 1188, 1192

7 | (2018) (federal habeas court should "look through" unexplained state court decision to last

8 | state court decision "that does provide a relevant rationale" and "should then presume that

9 | the unexplained decision adopted the same reasoning," although presumption may be

10 | rebutted); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one

11 | reasoned state judgment rejecting a federal claim, later unexplained orders upholding the

12 | judgment or rejecting the same claim rest upon the same ground.").

13 |         Petitioner presented his claim to the state courts on direct appeal.  (LD 3, 7.) The

14 | Court of Appeal denied it in a reasoned opinion and the California Supreme Court summarily

15 | denied review.  (LD 6, 8.)  The Court looks through the California Supreme Court's silent

16 | denial to the Court of Appeal's reasoned decision and applies the AEDPA standard to that

17 | decision.  See Wilson, 138 S. Ct. at 1192; Ylst, 501 U.S. at 803.

18 | **DISCUSSION**

19 |         Petitioner contends that the trial court denied him "the right to confront witnesses, the

20 | right to effective cross-examination, and the right to a reliable jury determination of the

21 | charges" when it required him and the testifying witnesses to wear masks that prevented the

22 | jury and counsel from observing facial expressions below the eyes.  (Pet. at 5, 18-24.)[1]  For

23 | the reasons set forth below, the state court reasonably denied this claim.

24 | ///

25 | ///

26 |

27 |       [1]    The court will use the page numbers assigned by the CM/ECF system.

28 |

1     **A.**     **Background**

2     At the time of Petitioner's trial in September 2020, the Los Angeles County Superior

3 Courts were operating under safety protocols adopted in response to the Covid-19

4 pandemic.  (LD 6 at 2.)  The applicable administrative order mandated, among other things,

5 that all persons entering any courthouse wear a face mask covering the mouth and nose.

6 (Id.)

7     Trial counsel requested that Petitioner be allowed to remain maskless during the trial

8 so that the jury could see his face and could "observe his expressions based on different

9 testimony."  (LD 2, 2 Reporter's Transcript ("RT") 8.)  She also requested that the witnesses

10 not wear masks while testifying, stressing the importance of facial expressions in assessing

11 credibility.  (2 RT 8.)  The trial court denied both requests.  (2 RT 9.)  It stated that the jury

12 would still be able see the witnesses' eyes and upper cheeks, and made a finding that "in

13 light of the current Covid 19 pandemic and widespread recommendation requirements of a

14 protective mask" to be worn in public spaces, "wearing such mask is a matter of public

15 necessity both for the protection of the witness and protection of the other participants in

16 these judicial proceedings."  (2 RT 9.)  Nevertheless, the trial court allowed Petitioner, trial

17 counsel, and the prosecutor to briefly remove their masks when introduced to the jury, as

18 long as they did not speak while their masks were off.  (2 RT 9-10.)

19     Later, the trial court stated that trial was proceeding under the Covid-19 protocol

20 because Petitioner wanted to go ahead with the trial and the trial court needed to make sure

21 that everyone in the courtroom was safe.  (2 RT 13.)  The trial court told Petitioner that if he

22 wanted to continue the trial to an unknown time in the future when masks were no longer

23 required, it would consider his request.  (2 RT 13-14.)  Petitioner consulted with trial counsel

24 and opted to proceed with the trial.  (2 RT 14.)

25     Later during the trial, the trial court put on the record that the witnesses all wore

26 standard masks that did not cover their eyes or extend to "beyond a standard area of where

27

28                        7

1  a standard mask would cover." (3 RT 1326-27.)  Trial counsel reiterated that she could not

2  "fully see expression in the mouth and the mouth expresses a lot of emotion." (3 RT 1327.)

3       **B.      Applicable Federal Law**

4       The Sixth Amendment gives a criminal defendant the right "to be confronted with the

5  witnesses against him." U.S. Const. amend. VI.  "[T]he Confrontation Clause guarantees the

6  defendant a face-to-face meeting with witnesses appearing before the trier of fact." Coy v.

7  Iowa, 487 U.S. 1012, 1016 (1988).  But the Confrontation Clause does not guarantee

8  criminal defendants "the absolute right to a face-to-face meeting with witnesses against them

9  at trial." Maryland v. Craig, 497 U.S. 836, 844 (1990) (emphasis in original).  Face-to-face

10 confrontation at trial is preferred, but it is not an indispensable element of the Sixth

11 Amendment right to confront one's accusers.  Id. at 849-50.  Exceptions to "a physical, face-

12 to-face confrontation at trial" are constitutionally permissible when "necessary to further an

13 important public policy," as long as "the reliability of the testimony is otherwise assured." Id.

14 at 850.

15      For instance, in Craig the Supreme Court held that the Confrontation Clause was not

16 violated when a child abuse victim was allowed to testify at trial by one-way closed circuit

17 television outside of the defendant's physical presence.  Id. at 855-57.  And the Ninth Circuit

18 held that the Confrontation Cause was not violated when a confidential informant was

19 allowed to disguise his appearance with a wig and a fake moustache while testifying at trial.

20 United States v. de Jesus-Castaneda, 705 F.3d 1117, 1120 (9th Cir. 2013); see also Morales

21 v. Artuz, 281 F.3d 55, 56, 60-62 (2d Cir. 2002) (permitting witness to testify while wearing

22 dark sunglasses "resulted in only a minimal impairment of the jurors' opportunity to assess

23 her credibility" and state court reasonably found no confrontation violation).

24      Applying Craig, numerous federal district courts around the country have concluded

25 that no Confrontation Clause violation occurs when witnesses are required to wear masks

26 covering their mouth and nose to minimize the risk of transmission of the Covid-19 virus.

27

28                                            8

1  See, e.g., United States v. Maynard, No. 2:21-cr-00065, 2021 WL 5139514, at *2 (S.D. W.

2  Va. Nov. 3, 2021); United States v. Holder, No. 18-cr-00381-CMA-GPG-01, 2021 WL

3  4427254, at *8-*9 (D. Colo. Sep. 27, 2021); United States v. Clemons, No. RDB-19-0438,

4  2020 WL 6485087, at *2 (D. Md. Nov. 4, 2020); United States v. James, No.

5  CR-19-08019-001-PCT-DLR, 2020 WL 6081501, at *2  (D. Ariz. Oct. 15, 2020); United

6  States v. Crittenden, No. 4:20-CR-7 (CDL), 2020 WL 4917733, at *7-*8 (M.D. Ga. Aug. 21,

7  2020).

8          **C.      Court of Appeal's Opinion**

9          The Court of Appeal rejected Petitioner's Confrontation Clause claim.  It noted that

10  "numerous federal district courts have concluded that, due to the unique and substantial

11  public health risks created by the ongoing global pandemic, the Confrontation Clause is not

12  violated by having a witness testify in a criminal proceeding with a mask covering the nose

13  and mouth."  (LD 6 at 5.)  It stated that it "agree[d] with the reasoning in those federal

14  decisions which rely on the public interest exception to the face-to-face confrontation

15  requirement discussed in Craig."  (Id. at 5-6.)  The Court of Appeal found that "the court's

16  mask requirement furthered the public policy of protecting against the substantial health risks

17  presented by the COVID-19 virus, particularly in an indoor setting like a courtroom," and "did

18  not meaningfully diminish the face-to-face nature of the witness testimony."  (Id. at 8.)  "The

19  witnesses testified in court, under oath and were subject to unfettered cross-examination by

20  counsel."  (Id.)  "The mask requirement did not significantly obstruct the jury's ability to

21  assess witness demeanor," because "[t]he jurors could see the witnesses' eyes, hear the

22  tone of their voices, and assess their overall body language."  (Id.)

23          The Court of Appeal rejected Petitioner's argument that the trial court should have

24  considered other measures to minimize the risk of infection, such as allowing witnesses to

25  testify remotely without a mask or reconfiguring the courtroom so that the witnesses could

26  testify without a mask at a distance from other persons.  (Id. at 8-9.)  Petitioner did not ask

27  the trial court to adopt such measures, the record did not show that "the particulars of the

28

9

1  courtroom here allowed for such accommodation," and Petitioner's argument that testifying

2  remotely from another location was preferable to testifying in his presence with a mask was

3  not supported by Sixth Amendment jurisprudence.  (Id.)

4       **D.    Analysis**

5      The state court's rejection of Petitioner's claim reflects a reasonable application of

6  governing Supreme Court precedent.  The Supreme Court has never held that a criminal

7  defendant's Sixth Amendment right to confront witnesses is violated when witness are

8  partially masked while testifying.  On the contrary, the Supreme Court has held that

9  exceptions to a defendant's right to confront witnesses face to face are constitutionally

10  permissible when "necessary to further an important public policy," as long as "the reliability

11  of the testimony is otherwise assured."  Craig, 497 U.S. at 850.

12      Petitioner's trial took place in September 2020, during the global Covid-19 pandemic

13  and before a vaccine was available.  Petitioner does not dispute that minimizing the risks of

14  transmission of Covid-19 in the courtroom is an important public policy.  See Crittenden,

15  2020 WL 4917733, at *3 (discussing "compelling policy reason[s]" for mask requirement).

16  He argues, however, that the trial court could have implemented alternative measures such

17  as social distancing, acrylic barriers, or clear face shields.  (Pet. at 21, 23-24.)  The trial

18  court's mask requirement was based on the recommendations issued by the Centers for

19  Disease Control and Prevention at the time of Petitioner's trial.  See James, 2020 WL

20  6081501, at *1.  Putting aside the comparative efficacy of masks and the measures

21  suggested by Petitioner, nothing in Craig suggests that in order to be constitutionally

22  permissible, the alternative to face-to-face confrontation must be the least restrictive means

23  of furthering the important public policy goal.  Craig requires only that the reliability of the

24  testimony must be assured under the alternative means of confrontation.  See Craig, 497

25  U.S. at 850.

26      The Supreme Court has explained that "[t]he combined effect of [the] elements of

27  confrontation—physical presence, oath, cross-examination, and observation of demeanor by

28

10

1  the trier of fact—serves the purposes of the Confrontation Clause by ensuring that evidence

2  admitted against an accused is reliable" and subject to "rigorous adversarial testing."  Id. at

3  846.  There was no impairment of the first three elements of confrontation at Petitioner's trial.

4  The witnesses were physically present in front of the jury and Petitioner;[2] they were under

5  oath; and they were subject to cross-examination.  Only the fourth element, observation of

6  the witnesses' demeanor, was slightly impaired because a mask covering the lower part of a

7  witness's face prevented the jurors from seeing the facial expression as conveyed by the

8  mouth and nose.  "The Confrontation Clause does not require that the jury be able to see a

9  witness's entire face or body."  James, 2020 WL 6081501, at *2.  The jurors were still able to

10  see the witnesses' eyes, observe their body language, and hear their tone of voice.

11  "Because the covering of the nose and mouth does not significantly hinder observation of

12  demeanor, allowing witnesses to testify while wearing masks does not materially diminish the

13  reliability of the witnesses' testimony."  Id.; see also Crittenden, 2020 WL 4917733, at *7

14  ("being able to see a witness's nose and mouth is not essential to testing the reliability of the

15  testimony" and despite witnesses' masks, "jurors will be able to observe most facets of the

16  witnesses' demeanor," including "how the witnesses move when they answer a question;

17  how the witnesses hesitate; how fast the witnesses speak" and whether "the witnesses blink

18  or roll their eyes, make furtive glances, and tilt their heads"); see also Maynard, 2021 WL

19  5139514, at *2 (noting that "[m]asks cover only the nose and mouth" and jurors "will be able

20  to assess tone, unusual pauses, shifting or squirming, eye contact, and body language to

21  evaluate demeanor and credibility").

22      Petitioner also argues that his right to confrontation was violated because his own

23  mask prevented the jurors and the testifying witnesses from seeing his expression in

24  response to the witnesses' testimony.  (Pet. at 18.)  The Supreme Court has never held that

25  a defendant's Sixth Amendment right to confront the witnesses against him encompasses a

26

27

28
_____
  [2]    The Confrontation Clause assures the defendant the presence of witnesses "upon whom he can
  look while being tried."  Coy, 487 U.S. at 1017.

11

1  right to convey to the jury his reaction to their testimony through his facial expressions.  The

2  witnesses testified in Petitioner's physical presence and were able to see his full person,

3  which would "impress upon them the gravity of the proceedings at which they testif[ied]."

4  United States v. Tagliaferro, 531 F. Supp. 3d 844, 849-50 (S.D.N.Y. 2021) (rejecting

5  confrontation challenge to mask requirement for defendant).  In any event, as discussed

6  above, the mask covering Petitioner's nose and mouth did not significantly hinder

7  observation of his demeanor.

8      Accordingly, the state court's rejection of Petitioner's confrontation claim was not

9  contrary to, or an unreasonable application of, clearly established federal law as set forth by

10  the United States Supreme Court.  Petitioner is not entitled to federal habeas relief.

11  **CERTIFICATE OF APPEALABILITY**

12      Pursuant to Rule 11 of the Rules Governing Section 2254 cases, the Court "must

13  issue or deny a certificate of appealability when it enters a final order adverse to the

14  applicant."  For the reasons stated above, the Court concludes that Petitioner has not made

15  a substantial showing of the denial of a constitutional right, as is required to support the

16  issuance of a certificate of appealability.  See 28 U.S.C. § 2253(c)(2).

17  **ORDER**

18      IT IS ORDERED that: (1) the Petition is denied; (2) an evidentiary hearing is denied;

19  (3) a certificate of appealability is denied; and (4) judgment shall be entered dismissing this

20  action with prejudice.

21

22  DATED: December 15, 2022                    /s/ John E. McDermott
                                          JOHN E. MCDERMOTT
23                                       UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28